UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
_____ DIVISION

FILED
VANESSA L. ARMSTRONG, CLERK
JAN 07 2016
U.S. DISTRICT COURT
WEST'N. DIST. KENTUCKY

Cherosco L. Brewer
_____
name of plaintiff(s)

v.   Civil Case No. 3:16CV-14-CRS

Holland # 7949; J. Adams # 2504; Det. T. James # 2522;

Holian # 7971; Stewart # 7845; Casse # 7821;

J. Beckett # 7968; 7843
name of defendant(s)

## COMPLAINT

1. State the grounds for filing this case in Federal Court (include federal statutes and/or U.S. Constitutional provisions, if you know them): Plaintiff, a layman to law, bring this Title 42 U.S.C.A. 1983 Civil Rights Complaint "under color of state law." Plaintiff, an African-American male, alleges that his 4th & 14th Amendment Rights were violated on multiple occassion by defendants' whey they civilly conspired and retaliated against plaintiff for filing a complaint against an illegal search which tuned up nothing on 11-4-15. Defendants' retaliated with 2 false arrest, false charges, malicious prosecuition, false reports, K-9 Dog sniffs and searches, all conducted without any reasonable articulable suspicion or probable cause of criminal activity.

2. Plaintiff, Cherosco L. Brewer                                        resides at

   658 S. 40th Street                                        , Louisville
   street address                                              city

   Jefferson      , Kentucky  ,  40211    , (502)
   county           state        zip code    area code, phone number

   (if more than one plaintiff, provide the same information for each plaintiff below):

3. Defendant, Officer Casse, Badge # 7821                        lives at, or its business is located at Louisville Metro Police Department, 633 West Jefferson Street,
street address 9th Mobile Unit,

Louisville, Jefferson, Kentucky,
city            county            state

40202
zip code

(if more than one defendant, provide the same information for each defendant listed above):

Police Officer's Holland # 7949; J. Adams # 2504; Holian # 7971; Stewart # 7345; Det. T. James # 2522; #7845 J. Beckett, located at the Louisville Metro Police Department at 633 West Jefferson Street, Louisville, KY.

40202

4. Statement of claim (State as briefly as possible the facts of your case. Describe how each defendant is involved. Include also the names of other persons involved, dates, and places. Be as specific as possible. You may use additional paper if necessary):

(1) On 11-4-15, Officer Casse pulled plaintiff over for alleged traffic-violation. Plaintiff was immediately pulled out of the car, and taken to back of his car. While officer was asking a string of questions not relevant to a traffic citation, plaintiff obseved another officer with his hand inside car on passenger side. Plaintiffs windows were open. Plaintiff respectfully informed officer that Judge John G. Heyburn had issued an Order for similar conduct by police officers at LMPD. Essentially stating that plaintiff had the right to be left alone when law abiding. (ORDER attached as exhibit A)

(2) In addition to sticking their hands in windows, police officers stuck their hands in plaintiffs' pockets and searched him. The finally gave him three (3) traffic citations, after holding him there for thirty (30) minutes waiting for the K-9 unit. As plaintiff was pulling off, the K-9 unit and three (3) other police cars arrived.

(3) On 11-9-15, plaintiff submitted a video request form of the incident. (Exhibit B is video request form), and plaintiff believes that somehow Officer Casse, and the 9th mobile found out about the request for the video.

(4) On 11-11-15, plaintiff was pulled over for tinted winows again. Plaintiff was immediately ordered from his

(Continued)

vehicle. Plaintiff asked, "Why do I need to get out my car about a traffic violation." Officer stated, "Because I said so. Under Pennsylvania v. Mimms, we can do this." As soon as plaintiff was getting out the car, officer placed his hands on plaintiff and attempted to go in his pockets.

5) Plaintiff asked officer to stop trying to stick his hands in his pockets, and officer stated, "Don't sue me Brewer!" sarcastically, with a smirk on his face. Before plaintiff could finished being escorted to the back of his vehicle, he observed the K-9 unit, and many of the same officers that were arriving as he was released from thirty minute delay for traffic tickets on 11-4-15.

6) Officers' stated, stand him over here, so he (K-9 officer) can walk the dog around the car, and with no "reasonable articulable suspicion" or "probable cause" of criminal activity, the K-9 officer proceeded to walk the dog around the plaintiffs' vehicle.

7) Plaintiff asserts that the entire stop was a pretext to search. The basis for this contention is that the police officers never made "any attempt" to justify, or otherwise effectuate the purpose of the alleged traffic violation stop by investigating the tinted window allegation.

8) Police officers are required to be diligent in their duties to investigate the alleged traffic citation, "Because addressing the infraction is the purpose of the stop it may.."last no longer than is necessary to effectuate th[at] purpose." Rodriguez v. United States, 575 U.S. ___ (2015); quoting Illinois v Caballies, 543 U.S. 405, 407 (2005).

9) As to the purpose of plaintiff being pulled over for alleged excessive window tint, the charge was based on the officers' opinion which was a visual estimate. Plaintiff asserts that the officer's visual estimate was required to be corroborated with evidence.

10) <u>KRS 189.110 (3), (4), (7), and (8)</u>, all require a percent measurement to determine whether the "reflectance" (*KRS 189.010(20)*), and "transmittance"(*KRS 189.010(22)* are legal limits. The legislature has defined excessive tint, and plaintiff asserts that a percent measurement cannot be made based on a visual estimate.

11) The citation does not contain any mention of using a tint-meter, or otherwise demonstrate any numbers consistent with the element's necessary to support a charge of excessive tint. Plaintiff cannot challenge a visual estimate, but could challenge the reliability of a tint-meter had officer's used one.

12) Police officer's never asked permission from plaintiff, or the female passenger, to search or allow a dog to sniff around the vehicle. The K-9 dog was already there, and the intent to search speaks for itself. The officer never stated any reasonable articulable suspicion or probable cause for wanting to search, nor have they made a contemporaneous record on the citation concerning their reason.

13) The duration of this stop lasted nearly two (2) hours, and plaintiff asserts that the actions of police officers', at all times relevant to this complaint, were carried out for racially motivated reasons, as well as retaliatory.

14 As a result of the illegal search, plaintiff was charged with the following; *KRS 527.040 possession of handgun by a convicted felon; KRS 218A.1421 trafficking in marijuana; KRS 218A.1417 possession of a controlled substance in the third degree; KRS 189.110 excessive window tint.*

15) Police officer's citation fails to allege the elements of excessive window tint based upon non- use of tint meter and it's required accurate percentage measurements.

16) Police officers' had the K-9 unit, and multiple cars present when plaintiff was **"initially"** pulled over. The K-9 officer had no reason to be present for a traffic citation. The United States Supreme Court has made it explicitly clear that "A dog sniff, by contrast, is a measure aimed at "detect[ing] evidence of ordinary criminal wrongdoing."" <u>Rodrguiz</u>, <u>supra</u>, *citing Indianapolis v. Edmonds,* 531 U.S. 32, 40-41 (2000. See also *Florida v. Jardines*, 569 U.S. 1, ___--___ (2013)(slip op., at 7-8). Plaintiff asserts that the only reason the show of police force was present at an alleged investigation of a traffic infraction, was to conduct the illegal act as complained of by plaintiff.

17) Plaintiff asserts that pursuant to LMPD Standard Operating Procedure (SOP herein) *12.14 thru 12.14.8*, sets forth a procedure in which the K-9 must be **"deployed"**. It is clear that the immediate presence of the K-9 at plaintiffs' traffic –stop, was conducted without any legal authority, and arbitrary under § 2 of the Kentucky Constitution.

18) Plaintiff assert that he is being maliciously prosecuted, and that police officers' complained of herein, **"civilly conspired"** to bring about this intended result.

### Third Traffic-Stop

19) On 11-12-15, plaintiff alleges that he was traffic-stopped for excessive window tint by many of the same police officer's, and pulled from his vehicle, and cuffed. Without permission, officers' immediately stuck their hands inside of plaintiff's pockets.

20) Again, the K-9 unit was present with dog, and at least three (3) other cars were detained directly across the street with what appeared to be African-American males sitting on the ground and others being searched.

21) After looking at plaintiffs' I.D., officer shout out, "Hey, look who I got here. It's Cherosco Brewer." Immediately plaintiff could see officer converging in his direction, and the officer's roughed plaintiff up by yanking and pulling him back and forth. It was clear officer's had the intent to provoke a response from plaintiff, to excuse the excessive force they were subjecting him to, and that they would have done more if citizens had not made comments.

22) While searching him, one officer took his hand and probed at the crack of plaintiffs buttocks, and said that he was "searching for drugs". At all times plaintiff relevant, plaintiff protested this unreasonable seizure conducted by police officers'.

23) With no reasonable articulable suspicion or probable cause of criminal activity, officers' opened all four doors of plaintiff's vehicle. The K-9 went in one side, and police officers entered the vehicle from the other side. As a result, plaintiff was charged with the following; *KRS 218A.1412, Trafficking in control substance in the first degree; KRS 218A.1415, Possession of a controlled substance in the first degree; KRS 189.110, excessive window tint.*

24) Police officers civilly conspired to submit false information on the citation by stating that plaintiff had "heroin" and two (2) ounces of cocaine. Officers made this assertion to insure that plaintiff would be indicted. When in fact, the evidence will show that officers had no evidentiary basis to support this charge or information submitted on the citation.

25) Plaintiff was detained for hours, being searched multiple times, and finally arrested. As complained in previous citation in this complaint; Police officers never investigated the charges of excessive tint, and the charge was based upon visual estimation.

26) Plaintiff assert that police officers had no interest or intent upon effectuating the purpose of their stops, and immediately proceeded to search in each instance complained of above.

27) Plaintiff assert that police officers implemented an illegal road block to search African-Americans cars, with dogs, for racially motivated reasons, and also retaliatory as well when it come to me.

28) The pretext traffic-stops to illegally search are flawed at their inception. In that, the 9th mobile unit is not an "ordinary" police exercise of power. It seems out of place that such a specialty unit would take so much interest in the enforcement of ordinary civil traffic-enforcement. With the excuse that they could not see into the vehicle. Yet, police officers cannot see into cargo vans, or semi-cabs on the roads.

29 All excessive window tint charges in this complaint share common characteristics of violations against plaintiff's Constitutional protection against unreasonable searches and seizures;

    (a) All the stops where for alleged traffic violations.

    (b) The searches were conducted without any reasonable articulable suspicion or probable cause of criminal activity;

    (c) That the purpose of the traffic-stop was not investigated, (*no tint meter*).

    (d) Most importantly, all these traffic stops "exceeded the time needed to handle the matter for which the stop was made".

30) The matter complained of herein, has been directly addressed by the Court in *Rodgriguez*, supra. There, our highest Court holds that "a police stop exceeding the time

needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizure. A seizure justified only by a police-observed traffic violation, therefore "become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission" of issuing a ticket for the violation." Citing *Illinois v. Caballies*, 543 U.S. 407, 407 (2005).

### Fourth Traffic-Stop

31) On 11-24-15, plaintiff was again pulled over for alleged excessive window tint. Consistent, it was some of the same officers that plaintiff has seen at the other complained of stops in this complaint.

32) Plaintiff was summarily ordered from the car, cuffed, and officer's started sticking their hands in his back pockets'. With no reasonable articulable suspicion or probable cause of criminal activity.

33) Plaintiff was unlawfully seized for at least 2 hour, and subjected to repeat searches of his persons, and his vehicle, all conducted under the color of law for racially and retaliatory reasons in violation of plaintiff 4th and 14th Amendment rights to be protected against such acts. Police Officers' search turned up "nothing".

34) Plaintiff reallege and incorporate herein by reference the allegations set forth in paragraphs 1-33 of this Complaint.

### First Cause of Action

35) Plaintiff allege that his 4th and 14th Amendment rights were egregiously stepped upon when police officers', while acting under the color of law and for racially motivated and retaliatory reasons, unlawfully seized, searched, arrested plaintiff as specifically pointed to at 1-34 of this complaint. That the traffic-stops were pretext to search plaintiff unlawfully with K-9 dogs that unlawfully deployed. All searches were conducted without plaintiffs consent.

### Second Cause of Action

36) Plaintiff allege that his 4th and 14th Amendment rights were violated when he was subjected to an unlawful "roadblock", (on 11-12-15) and that the 9th mobile unit impounded at least 30 vehicles, via the complained of actions, implemented on poor African-Americans, in low-economic areas, within a very short period. That the 9th Mobile unit is a new version of the disbanded viper unit which plaintiff had very same issues with. Police officers, while acting under the color of law, denied plaintiff equal protection of law in subjecting him to such unlawful roadblocks.

### Third Cause of Action

37) Plaintiffs 4th & 14th Amendment rights are being violated when defendants falsely and maliciously prosecute him based upon their unlawful conduct. That the defendants civilly conspired by submitting false and perjured information on citations, as well as all acts and omissions complained of at 1-36 of this complaint.

## Plaintiff's Requested Relief

a) Plaintiff request to preserve the issue of being able to amend his Complaint accordingly if he has any such entitlement to amend, if necessary.

b) Plaintiff seeks punitive damages from each named defendant in the amount of $100,000.00 for the violations to his Constitutional rights.

c) Plaintiff request any and all other relief t which plaintiff may be entitled, including reasonable attorney fees, and court cost associated with these proceedings.

d) Plaintiff request a Jury Trial on all triable issues contained in this Complaint,

I, Cherosco L. Brewer, hereby certify under the penalty of perjury that the Above statements ae true and correct to the best of my personal knowledge and belief.

Signed this __7__ day of January, 2016.

*Cherosco L. Brewer*
Cherosco L. Brewer, pro se