UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CHEROSCO BREWER                                                                                          Plaintiff

v.                                                                                    Civil Action No. 3:16-cv-14-RGJ

OFFICER ROBERT HOLLAND, *et al.*                                                                    Defendants

### MEMORANDUM OPINION AND ORDER

Defendants Robert Holland, Joel Casse, Holly Hogan, Chad Stewart, Jimmy Adams, Anthony James, and Justin Bickett (collectively "Defendants") move for summary judgment. [DE 78]. Plaintiff Cherosco Brewer ("Mr. Brewer") responded, Defendants replied, and Mr. Brewer filed a sur-reply. [DE 86, 87, 88]. This matter is ripe. For the reasons below, Defendants' Motion, [DE 78], is **GRANTED**.

### BACKGROUND

This case arises out of four traffic stops initiated by the Louisville Metropolitan Police Department ("LMPD") in November 2015. The operator of the vehicles in each of these traffic stops was the plaintiff, Mr. Brewer.

The first traffic stop occurred on November 4, 2015 ("the November 4 stop"). Mr. Brewer was driving a rented 2015 Dodge Charger late at night when he was pulled over by Defendant Officers Casse and Stewart for failing to activate his turn signal before making a turn. [DE 78-1 at 3]. Because it was dark outside and the car's windows were heavily tinted, Defendants asked Mr. Brewer to stand outside the vehicle during the stop for safety reasons. [*Id.* at 3–4]. After a twenty-two-minute stop, Mr. Brewer was handed a citation for failure to signal, failure to wear a seatbelt, and excessive window tint. [*Id.*]. He was given a court date and permitted to leave. [*Id.*].

The second traffic stop occurred late in the evening on November 11, 2015 ("the November 11 stop"). Defendant Hogan and Detective Tyler Holland pulled over Mr. Brewer while he was driving the same rented 2015 Dodge Charger [*Id.*]. Because it was dark out and because the vehicle windows were heavily tinted preventing the officers from viewing the inside of the vehicle, the officers asked Mr. Brewer and his passenger to stand outside for safety reasons. [*Id.* at 4–6]. Shortly afterward, Defendant James arrived on the scene with a sniffer dog, K-9 Officer Diesel. [*Id.* at 5]. Because Diesel indicated that contraband was inside, Defendant James deployed Diesel to the interior of the vehicle. [*Id.*; DE 78-2 Ex. 14, A. James Bodycam]. Diesel alerted Defendants to several plastic baggies of marijuana individually packaged for sale throughout the vehicle, as well as a Glock 22 handgun hidden in the steering column. [*Id.*]. After a one-hour traffic stop, Mr. Brewer was arrested, transported to Louisville Metro Department of Corrections, and booked. [*Id.*]. He quickly posted bail and was released. [*Id.*].

The third traffic stop occurred the next day, November 12, 2015 ("the November 12 stop'). Once again, it was late at night and dark outside. [*Id.* at 7]. Once again, Mr. Brewer was driving a vehicle with heavily tinted windows, this time a 2010 Ford Taurus belonging to his girlfriend. [*Id.* at 7–8; DE 78-2 Ex. 17, C. Stewart Bodycam]. Due to the excessive window tint and odd driving behavior by Mr. Brewer, Defendants Stewart and Casse initiated a traffic stop. [*Id.* at 7–8]. Defendants again asked Mr. Brewer to stand outside the vehicle because of its excessive window tint preventing the officers from safely visualizing the interior. [*Id.* at 7]. Defendant James and K-9 Officer Diesel were again on the scene, and Diesel again alerted that there was contraband inside the vehicle. [*Id.*]. He directed Defendants to a space underneath the dashboard where they found fifteen bindles of cocaine individually packaged for sale. [*Id.*]. After a twenty-four-minute stop, Mr. Brewer was again arrested and transported to Louisville Metro Department

of Corrections for booking. [*Id.* at 8]. Mr. Brewer held his right arm as away from his body making it difficult for Defendants to handcuff him. [DE 78-2 Ex. 17, C. Stewart Bodycam; DE 78-1 at 33]. Mr. Brewer again posted bond and was released. [DE 78-1 at 8].

The final traffic stop occurred on November 24, 2015 ("the November 24 stop"). Defendant Bickett pulled Mr. Brewer over because he was driving a rental car with excessively tinted windows making it impossible to see into the interior vehicle even when light was shining directly on it. [DE 78-1 at 9; DE 78-2 Ex. 21, J. Bickett Bodycam]. Due to the inability to see inside the vehicle, Defendant Bickett asked Mr. Brewer to stand outside. [*Id.*]. Defendant Bickett verified Mr. Brewer's authorization to drive the rental, wrote the citation for excessive window tint and permitted Mr. Brewer to leave. [*Id.*]. The stop lasted about twenty-nine minutes. [*Id.*].

The United States Attorney eventually charged Mr. Brewer with crimes arising out of the November 11 and November 12 stops in the Western District of Kentucky. The Honorable David J. Hale presided over the case. A federal grand jury returned a four-count indictment for (1) being a felon in possession of a firearm; (2) possessing marijuana with intent to distribute; (3) possessing a firearm in furtherance of drug trafficking; and (4) possessing cocaine with intent to distribute. [DE 78-1 at 9-10]. Mr. Brewer moved to suppress all evidence seized at those two stops, arguing that Defendants lacked reasonable suspicion to pull him over, did not diligently investigate the window tint on his vehicles, and unlawfully prolonged the stops to allow for canine sniffs. [*Id.* at 10]. After a suppression hearing, Judge Hale denied the motion to suppress the physical evidence. [*Id.*]. The evidence from the November 11 and November 12 stops was presented at trial and Mr. Brewer was convicted by a jury on all four counts. [DE 78 at 1]. He was sentenced to 240 months in federal prison. [*Id.* at 2]. Mr. Brewer then appealed the denial of his motion to suppress and the Sixth Circuit affirmed Judge Hale's ruling. [*Id.*]. On October 4, 2021, the Supreme Court

denied Mr. Brewer's petition for certiorari, making his convictions and sentence final. [DE 78-1 at 10].

Mr. Brewer filed the instant lawsuit in the Western District of Kentucky on January 7, 2016, before his federal criminal case even began. [*Id.* at 11]. The Court screened the complaint pursuant to 28 U.S.C. § 1915A, and it dismissed several Mr. Brewer's claims. [DE 13]. It allowed these claims to proceed:

> (1) As to the November 4, 2015, traffic stop, the following claims will proceed against Defendants Casse and Stewart: (1) A Fourth Amendment seizure claim; (2) a Fourth Amendment search claim; and (3) a Fourteenth Amendment equal protection claim.
>
> (2) As to the November 11, 2015, traffic stop, the following claims will proceed: (1) a Fourth Amendment seizure claim against Defendants Holland, Hogan, and Adams; (2) a Fourth Amendment search claim against Defendants James, Hogan, Holland, and Adams; (3) a Fourteenth Amendment equal protection claim against Defendants James, Hogan, Holland, and Adams; and (4) a Fourth Amendment malicious prosecution claim against Defendants James, Hogan, Holland, and Adams. (DN 13.)
>
> (3) Regarding the November 12, 2015, traffic stop, the following claims will proceed: (1) a Fourth Amendment seizure claim against Defendants Stewart and Casse; (2) a Fourth Amendment search claim against Defendants Stewart, Casse, and James; (3) a Fourth Amendment excessive force claim against Defendants Stewart and Casse; (4) a Fourteenth Amendment equal protection claim against Defendants Stewart, Casse, and James; and (5) a Fourth Amendment malicious prosecution claim against Defendants Stewart and Casse.
>
> (4) Regarding the November 24, 2015, traffic stop, the Court allowed the following claims to proceed: (1) a Fourth Amendment seizure claim against Defendant Bickett; (2) a Fourth Amendment search claim against Defendant Bickett; and (3) a Fourteenth Amendment equal protection claim against Defendant Bickett.

[DE 13 at 8–9].

The Court subsequently elected to stay the case until Mr. Brewer's criminal case was resolved, [*Id.*]; *see Wallace v. Kato*, 549 U.S. 384, 393–94 (2007), and it did not lift the stay until after the Supreme Court denied cert in October 2021. [DE 68]. About five months later, Defendants moved for summary judgment on Mr. Brewer's remaining claims. [DE 78].

4

**STANDARD**

Summary judgment is required when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of specifying the basis for its motion and showing the lack of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the nonmoving party must produce specific facts showing a material issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "Factual differences are not considered material unless the differences are such that a reasonable jury could find for the party contesting the summary judgment motion." *Bell v. City of E. Cleveland*, 125 F.3d 855, 1997 WL 640116, at *4 (6th Cir. 1997) (citing *Liberty Lobby*, 477 U.S. at 252).

A district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. *See Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008); *see also Adams v. Metiva*, 31 F.3d 375, 384 (6th Cir. 1994). The Court must view the evidence and draw all reasonable inferences in a light most favorable to the nonmoving party. *See Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). But the nonmoving party must do more than show some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party must present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1); *see also Shreve v. Franklin Cty., Ohio*, 743 F.3d 126, 131–32 (6th Cir. 2014). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Liberty Lobby*, 477 U.S. at 252.

## DISCUSSION

A. *Whether Mr. Brewer's Search, Seizure, and Malicious Prosecution Claims Arising Out of the November 11 and November 12 Stops are Barred by* Heck v. Humphrey

Under *Heck v. Humphrey*, 512 U.S. 477 (1994), a convicted prisoner cannot prevail in a civil rights action "if success in that action would necessarily demonstrate the invalidity of confinement or its duration" unless his conviction has in some way been overturned or expunged. *Wilkerson v. Dotson*, 544 U.S. 74, 82 (2005) (emphasis removed); *Heck*, 512 U.S. at 487. The conviction must have been invalidated by being "reversed on direct appeal, expunged by executive order, declared invalid . . . , or called into question by . . . a writ of habeas corpus, 28 U.S.C. § 2254." *Heck*, 512 U.S. at 486–87. "[C]ivil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments." *Id.* at 487. *Heck* is a broad doctrine. It applies to claims by state as well and federal inmates, claims against state as well as federal officers, and claims for damages as well as equitable relief. *See Fitch v. Gonzalez*, 425 F. App'x 440, 441–42 (6th Cir. 2011); *Clemente v. Allen*, 120 F.3d 703, 705 (7th Cir. 1997); *Wilkerson*, 544 U.S. at 82. *Heck* itself barred a malicious prosecution claim, and the Sixth Circuit has made clear that the doctrine applies to Fourth Amendment search and seizure claims. *Heck*, 512 U.S. at 477; *Schilling v. White*, 58 F.3d 1081, 1086 (6th Cir. 1995).

It is uncontested that Mr. Brewer's criminal convictions that resulted from the November 11 and November 12 stops are valid and in force, even after multiple unsuccessful appeals. [*See* DE 78-1 at 10, 19]. It is also sufficiently clear that the drugs and gun seized at these stops were essential to his convictions. One cannot be convicted of possession with intent to distribute illicit drugs without being caught possessing illicit drugs, nor can one be convicted for possessing a firearm without being caught in possession of a firearm. [*See* DE 78 at 1]. It stands to reason that if Mr. Brewer was successful on his Fourth Amendment search and seizure claims, and it was held

6

that Defendants' traffic stops and vehicle searches were unlawful, all four of his convictions would be called into question. *See Wilkinson*, 544 U.S. at 82. Therefore, the *Heck* doctrine bars Mr. Brewer's search and seizure claims. *See Wilkinson*, 544 U.S. at 82; *Heck*, 512 U.S. at 486–87.

The same goes for Mr. Brewer's malicious prosecution claims. To win on a malicious prosecution claim, the plaintiff must prove that "the government lacked probable cause." *Lester v. Roberts*, 986 F.3d 599, 606 (6th Cir. 2021) (citing *Jones v. Clark Cnty.*, 959 F.3d 748, 756 (6th Cir. 2020)). If Defendants did not have probable cause to prosecute Mr. Brewer, then Mr. Brewer could not have legally been convicted. *See Dobson v. Sandidge*, 1:20-cv-00115-GNS, 2021 WL 707657, at *3 (W.D. Ky. Feb. 23, 2021) ("Plaintiff's claim for malicious prosecution alleges a lack of probable cause" that "would impliedly invalidate her criminal charges"). So, if Mr. Brewer were successful on his malicious-prosecution claim, it would call into question the legality of his convictions. *Wilkinson*, 554 U.S. at 477–78. Mr. Brewer cannot bring his claims for unlawful search and seizure or malicious prosecution until he successfully gets his convictions invalidated through the criminal process. *See id.* at 476–77.

The Court also notes an alternative ground for granting summary judgment for Defendants on Mr. Brewer's malicious prosecution claim. The fourth element of malicious prosecution is that "the prosecution ended in the plaintiff's favor." *Lester*, 986 F.3d at 606. Mr. Brewer is currently incarcerated and his convictions remain in effect, so the prosecution did not end favorably for him. [*See* DE 78-1 at 10, 19]. Mr. Brewer fails to make a *prima facie* case for malicious prosecution.

In his response and sur-reply, Mr. Brewer maintains that the searches and seizures of his vehicles were unlawful and that Defendants are "trying to steer this Court to base its ruling on what the district court and the court of appeals rulings were." [DE 86 at 1–3; DE 88 at 1]. It is evident from reading Mr. Brewer's filings that he is trying to relitigate issues decided against him

7

at his suppression hearing, hoping that a different district judge will render a different decision. [*See* DE 78-1 at 10]. This is not allowed. "[C]ivil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments." *Heck*, 512 U.S. at 486. With all appeals exhausted, the only way Mr. Brewer may challenge his conviction is by moving to vacate sentence under 28 U.S.C. § 2255. *See Okereke v. United States*, 307 F.3d 117, 120 (3d Cir. 2002) (stating that such a motion is "the presumptive means by which federal prisoners can challenge their convictions or sentences"). Only after getting his convictions vacated can Mr. Brewer obtain the relief he seeks.

      B.  *Whether Defendants Had Probable Cause to Justify the November 4 and November 24 Stops*

"An ordinary traffic stop by a police officer is a 'seizure' within the meaning of the Fourth Amendment." *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008) (citing *Delaware v. Prouse*, 440 U.S. 648, 653 (1979)). To lawfully effect a traffic stop, "an officer must possess either probable cause of a civil infraction or reasonable suspicion of criminal activity." *United States v. Lyons*, 687 F.3d 754, 763 (6th Cir. 2012) (citing *Gaddis ex rel. Gaddis v. Redford Twp.*, 364 F.3d 763, 771 n.6 (6th Cir. 2004)). "Probable cause is a reasonable ground for belief supported by less than prima facie proof but more than mere suspicion." *Blair*, 524 F.3d at 748 (citing *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006)). "[T]he ultimate question of probable cause . . . in a civil case when the historical facts are undisputed is a question of law for the court and not a jury." *Gerics v. Trevino*, 974 F.3d 798, 805 (6th Cir. 2020). "When a traffic stop is supported by probable cause, an officer's subjective intent is irrelevant." *Blair*, 524 F.3d at 748 (citing *Whren v. United States*, 517 U.S. 806, 813 (1996)). However, the stop may only last as long as is necessary for the officer to investigate the violation that prompted it. *Rodriguez v. United States*,

575 U.S. 348, 354 (2015).  If the stop lasts longer than the investigation should reasonably take, it becomes an unconstitutional seizure.  *See id.*

Here, Defendants had probable cause of a civil infraction at both traffic stops.  Mr. Brewer failed to signal before making a turn before the November 4 stop, giving Defendants cause to pull him over.  [DE 78-1 at 3; DE 78-6].  Mr. Brewer does not deny that he failed to signal.  The bodycam footage shows that the stop lasted just 22 minutes, about half of which was spent writing the citation.  This is a reasonable amount of time to investigate the failure to signal, investigate the excessive window tint, and write the resulting citation.  *See Rodriguez*, 575 U.S. at 354; [DE 78-2 Ex. 5, J. Casse Bodycam].  For the November 24 stop, Defendant Officer Bickett pulled Mr. Brewer over because his windows were so tinted that "the inside of the vehicle could not be seen with a 600-lumen flashlight," a clear violation of Louisville's prohibition against overly tinted windows giving the officer probable cause to effect a traffic stop.  [DE 78-1 at 9; DE 78-16; DE 78-2 Ex. 21, J. Bickett Bodycam]; *see Lyons*, 687 F.3d at 763.  The 29 minutes it took to pull Mr. Brewer over, investigate the window tint, check his authorization to drive the rental vehicle, and write his citation (which took approximately 12 minutes) was a reasonable amount of time to complete those steps.  *See Rodriguez*, 575 U.S. at 354; [DE 78-2 Ex. 21].

Mr. Brewer contends that the November 4 stop was unlawful because he was detained for forty-five minutes, longer than necessary to effectuate the stop's purpose.  [DE 12; DE 78-1 at 11].  He makes a similar claim about the November 24 stop, saying that it last over two hours.  [DE 1; DE 78-1 at 11].  But the bodycam footage shows that neither stop lasted nearly as long as Mr. Brewer claims as the November 4 stop lasted 22 minutes and the November 24 stop lasted 29 minutes, and the Court must "view[] the facts in the light depicted by the videotape."  *Green v. Throckmorton*, 681 F.3d 853, 859 (6th Cir. 2012) (quoting *Scott v. Harris*, 550 U.S. 372, 378–81

(2007)). Mr. Brewer also claims that Defendants stuck their hands in his pockets during the November 4 and November 24 stops. [DE 12; DE 78-1 at 28]. The bodycam footage does not show this happening at either stop. *See Green*, 681 F.3d at 859; [DE 78-2 Exs. 5, 21].

### C. *Whether Defendants Used Excessive Force to Arrest Mr. Brewer on November 12*

Using excessive force to carry out an arrest violates the Fourth Amendment's prohibition against unreasonable seizures. *See Graham v. Connor*, 490 U.S. 386, 394 (1989). "Claims of excessive force are analyzed under an objective-reasonableness standard, which depends on the facts and circumstance of each case viewed from the perspective of a reasonable officer on the scene." *Miller v. Sanilac Cnty.*, 606 F.3d 240, 251 (6th Cir. 2010). "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)) (internal quotation marks and citation omitted). Summary judgment is proper when, considering the totality of the circumstances, the amount of force the officers were alleged or shown to have used was objectively reasonable. *See Fox v. DeSoto*, 489 F.3d 227, 236–37 (6th Cir. 2007).Here, the bodycam footage shows the entire arrest, and the Court must view the arrest in the light depicted by the footage. *Green*, 681 F.3d at 859; [DE 78-2 Ex. 17, C. Stewart Bodycam]. Not only did Defendants not use excessive force on Mr. Brewer, but they used about the minimum amount of force necessary to detain him. The video shows, as Mr. Brewer alleged, [DE 1 at 6], Defendants pulling and yanking Mr. Brewer's hands together to handcuff him. [DE 78-2 Ex. 17]. But they had to pull on Mr. Brewer's right arm because he was deliberately holding it as far from his body as possible to

prevent Defendants from cuffing him. [*Id.*; DE 78-1 at 33]. This amount of force was reasonable in response to Mr. Brewer's light resistance to arrest.

D. *Mr. Brewer's Equal Protection Claims*

"It is axiomatic that the Equal Protection Clause of the Fourteenth Amendment protects citizens from police action that is based on race." *Bennett v. City of Eastpointe*, 410 F.3d 810, 818 (6th Cir. 2005) (citing *United States v. Avery*, 137 F.3d 343, 352 (6th Cir. 1997)). To prevail on an equal protection claim alleging selective enforcement by police officers, the plaintiff must show that the officers' actions "had a discriminatory effect and that it was motivated by a discriminatory purpose." *Wayte v. United States*, 470 U.S. 598, 608 (1985). A common way to show discriminatory effect is to proffer evidence "showing that the police treated similarly situated individuals of another race differently through statistical evidence or identifying a person of another race who police treated differently." *King v. City of Eastpointe*, 86 F. App'x 790, 802 (6th Cir. 2003). And the plaintiff can show discriminatory purpose by providing evidence that the officials chose to take the actions they did "at least in part because of, not merely in spite of, its adverse effects upon an identifiable group." *Id.* (internal quotation marks omitted).

Mr. Brewer has proffered no evidence that any of the four traffic stops or events comprising them resulted from racial discrimination. He has not attempted to show that he was treated differently than members of other racial groups, nor has he made any showing that Defendants pulled him over, searched his cars, or arrested him because of his race. In fact, Mr. Brewer did not even mention his equal protection claims or Defendants' defenses to them in his response or sur-reply, appearing to wholly abandon them. [*See* DE 86; DE 88]. Without evidence to support the equal protection claims, Defendants are entitled to summary judgment on them. *See Liberty Lobby*, 477 U.S. at 252.

## CONCLUSION

For all these reasons, and the Court being otherwise sufficiently advised, **IT IS ORDERED** as follows:

(1) Defendants' Motion for Summary Judgment [DE 78] is **GRANTED**.

March 2, 2023

Rebecca Grady Jennings, District Judge
United States District Court

cc:    Counsel of record
       Cherosco Brewer, *pro se*